## Commonwealth v. Armstrong

*Robert B. Nicholas, Deputy Attorney General*, for Commonwealth.
*Morris D. Armstrong, propria persona.*

HIRSH, *J.*, September 25, 1974—

## FINDINGS OF FACT

1. Plaintiff is the Commonwealth of Pennsylvania acting by Attorney General Israel Packel.

2. Defendants are Morris D. Armstrong, an adult individual residing at 2513 West Master Street, Philadelphia, Pa., sued in his individual capacity and as trustee ad litem for The M. D. Armstrong Society, and The M. D. Armstrong Society, an unincorporated association utilizing a mailing address at P. O. Box 17086, Philadelphia, Pa., and a principal place of business at 2513 West Master Street, Philadelphia, Pa.

3. The M. D. Armstrong Society is not registered to do business within the Commonwealth under the Fictitious Names Act of May 24, 1945, P.L. 967, as amended, 54 P.S. §§28.1, et seq.

4. Morris D. Armstrong formulates the activities of the society and directs and controls same.

5. Defendants are engaged in commerce and trade within the Commonwealth through advertisement and solicitation within and without the

Commonwealth, for the purpose of inducing persons to become members of the society's "Professional Borrowers Program."

6. Defendants operate a borrowers program whereby members of the society who arrange to borrow money from legitimate lending institutions are thereafter entitled to send one-half of the loan proceeds to the society, which, in turn, allegedly assumes the original and full loan obligation.

7. Defendants solicit membership in the society and the borrowers program through advertisements in the printed media, both within and without the Commonwealth.

8. Individuals become members in the society and are entitled to participate in the borrowers program by paying a $25 fee to defendants; a $10 deposit in response to defendants' advertisement in order to receive defendants' membership application and certain details, and $15 thereafter to receive the society's guidelines.

9. All defendants' promotional materials received by the individual prior to the payment of the $25 fee represent and/or imply that a member will not have to repay anything on loans which the society assumes.

10. It is not until after the individual pays the full membership fee that the member receives defendants' guidelines, which guidelines disclose for the first time that the member must send one-half the loan proceeds to the society before the society will assume the loan obligation.

11. Defendants' promotional materials represent directly and by implication that through society membership members can get all the money they need without obligation by borrowing from legitimate lending institutions and having the society repay the total loan obligations.

12. Defendants' promotional materials represent directly and by implication that the borrower has no obligation to repay the loan after the society assumes the loan obligation.

13. Contrary to defendants' representations set forth in paragraphs 11 and 12, supra, and the reasonable inferences drawn therefrom, the assumption of the loan by the society does not relieve the borrower as the primary obligator on the loan.

14. Defendants' promotional materials represent directly and by implication that defendants relieve all the financial worries and obligations of their members by converting loans in free money.

15. Contrary to the representations set forth in paragraph 14, supra, and the reasonable inferences drawn therefrom, the assumption of the loan by the society does not create free money for members and, in fact, may create the additional liability on society members to repay the loan obligations of all members.

16. Defendants' promotional materials represent that certain materials and/or programs are copywritten.

17. Contrary to the representations set forth in paragraph 16, supra, defendants' promotional material and/or borrowers program is not protected by any copyright issued by the United States Government or otherwise.

18. Defendants' have few, if any, assets other than the proceeds of the loans supplied by members.

19. The society must pay in excess of 100 percent interest on each loan it becomes obligated to repay.

20. Defendants' program guarantees a 100 percent return, rate of interest and/or profit to each member on all money given to the society in that for

an investment in the society of one-half of the proceeds of a loan the society alleges to repay the total loan obligation.

21. Defendants' borrowers program is inherently fraudulent in that said program is incapable of sustaining and supporting itself and defendants' cannot repay all the financial obligations assumed by the society without great financial loss to the members of the society.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter of this litigation.

2. Defendants have been, and are presently, engaged in soliciting memberships in the society and in operating a borrowers program within and affecting the people of the Commonwealth and are, therefore, engaged in commerce and trade as defined by section 201-2(3) of the Unfair Trade Practices and Consumer Protection Law of December 17, 1968, P.L. 1224, 73 P.S. §201-2(3).

3. Defendants are in violation of the Fictitious Names Act of May 24, 1945, P.L. 967, sec. 1, as amended, September 23, 1959, P.L. 936, sec. 1, 54 P.S. §28.1, as defendant Armstrong is required to register the society in accordance with said act.

4. The failure to register under the Fictitious Names Act, supra, for one required thereunder to register is a violation of section 3 of the Unfair Trade Practices and Consumer Protection Law of December 17, 1968, P.L. 1224, 73 P.S. §201-3.

5. Defendants have been, and are, engaged in unfair methods of competition and unfair or deceptive acts or practices in trade and commerce in that they have, and are presently, causing likelihood of confusion or of misunderstanding as to the

source, sponsorship, approval or certification of goods or services; causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another; representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have; advertising goods or services with intent not to sell them as advertised; making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding.

6. The aforesaid acts and practices have a tendency to deceive a substantial segment of its audience and are likely to make a difference in the decision as to whether or not to join the society.

7. The acts and practices set forth in paragraph 5, supra, of these conclusions of law are illegal and in violation of section 3 of the Unfair Trade Practices and Consumer Protection Law of December 17, 1968, P.L. 1224, 73 P.S. §201-3.

8. This court has the power and authority by injunction to restrain and prevent violations of said act by virtue of section 4 thereof.

## DECREE NISI

And now, September 25, 1974, it is ordered and decreed that defendants, Morris D. Armstrong, individually and as trustee for The M. D. Armstrong Society, and The M. D. Armstrong Society, their successors, agents, employes, representatives, and all persons acting on their behalf, directly or through any corporate or other device are permanently enjoined from:

1. Conducting any business under the name "The M. D. Armstrong Society" or any other fictitious or assumed name until such time as defendants are in compliance with the Fictitious Names Act, supra, 54 P.S. §28.1; and

2. Promoting and/or operating the professional borrowers program, as set forth in plaintiff's complaint, and shall not hereinafter operate said program in any manner whatsoever or any substantially similar program under the name The M. D. Armstrong Society or any other name; provided, however, that nothing herein shall prohibit defendants from refunding any and all moneys paid to defendants by any individual member in the society; and

3. Mailing or otherwise distributing from or within the Commonwealth those documents attached to plaintiff's complaint and identified therein as exhibits "A" through "E" inclusive; and

4. Advertising for or otherwise requesting any deposit, membership fee or other thing of value from any person as payment for membership in any organization or for the purchase or lease of any product, service or other thing of value, without clearly, conspicuously and truthfully disclosing in close proximity to said offer, and prior to the payment of anything of value to defendants, all of the material terms, conditions and obligations associated with said membership, lease and/or purchase; and

5. Advertising or otherwise representing that anything is free, singularly or in conjunction with the payment of anything of value, without in close proximity to said offer and prior to the payment of anything of value to defendants, conspicuously, clearly, fully and truthfully disclosing all of the

material terms and conditions associated with said offer; and

6. Advertising or otherwise representing directly or indirectly that defendants' guarantee any rate of return, interest and/or profit on any investment, deposit or other thing of value and thereafter failing to provide said return, interest and/or profit, or otherwise advertising any said or similar guarantee, unless performance of said guarantee is secured by a guaranteed bond of some third party acceptable as a surety by the Prothonotary of Common Pleas Court (Philadelphia County), non-risk securities or other similar collateral held in escrow, or other substantially similar collateral such as would insure defendants' performance of any said guarantee; and

7. Advertising or otherwise misrepresenting, directly or indirectly, that defendants' materials are copyrighted or otherwise misrepresenting any sponsorship, approval or certification.

It is further ordered that defendants are to forthwith send a copy of this order to each member of the society's professional borrowers program.

It is further decreed that jurisdiction over defendants is retained for the purpose of enforcing this order, including the assessment of civil penalties as provided for in section 8 of the Unfair Trade Practices and Consumer Protection Law of December 17, 1968, P.L. 1224, 73 P.S. §201-8, and any other remedy which may be appropriate and proper.

The prothonotary is directed forthwith to enter this decree and give notice thereof to all parties of record and their counsel. If no exceptions are filed thereto within 20 days after notice, a final decree shall be entered as of course by the prothonotary.