**COMMONWEALTH of Pennsylvania, Acting By Attorney General Thomas W. CORBETT, Jr., Plaintiff**

v.

**PEOPLES BENEFIT SERVICES, INC., Defendant.**

Commonwealth Court of Pennsylvania.

Argued Jan. 30, 2006.
Decided March 28, 2006.

---

David J. Sumner, Deputy Attorney General and Linda J. Williams, Chief Deputy Attorney General, Harrisburg, for plaintiff.

Don M. Tellock, New York, NY, for defendant.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

## OPINION BY Judge FRIEDMAN.

Before this court are preliminary objections filed by Peoples Benefit Services, Inc., (PBS) to a Complaint in Equity (Complaint) filed against PBS by the Commonwealth of Pennsylvania, Acting by Attorney General Thomas W. Corbett, Jr., (Commonwealth), pursuant to section 4 of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1]

PBS has sold discount prescription drug, medical and dental cards and/or memberships and related services to senior citizens since 1994, marketing its products and services through direct mail, telephone solicitations and television advertisements. More recently, the federal government established its own Medicare-endorsed prescription drug discount cards and prescription drug coverage program, which received widespread publicity. At this same time, PBS began marketing a new prescription drug discount card and began mailing new solicitations and otherwise advertising its goods and services.

In response to various consumer complaints, the Commonwealth began investigating PBS's business practices and, as a result of the investigation, on November 2, 2005, the Commonwealth filed an eight-count Complaint against PBS for alleged violations of the UTPCPL, Telemarketer Registration Act (Telemarketing Act),[2] Fictitious Names Act[3] and related violations of federal law and regulations.[4] In its Complaint, the Commonwealth alleges generally that PBS has engaged in unfair methods of competition and unfair or deceptive acts or practices by marketing in ways that could confuse or mislead consumers into believing that PBS and/or its goods and services are government related, in violation of sections 2 and 3 of the UTPCPL.[5]

---

1. Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. § 201-4. Section 4 of the UTPCPL authorizes the Attorney General to bring an action in the name of the Commonwealth to restrain by temporary or permanent injunction the use of any method, act or practice declared unlawful under section 3 of the UTPCPL, 73 P.S. § 201-3.

2. Act of December 4, 1996, P.L. 911, *as amended*, 73 P.S. §§ 2241–2249.

3. Act of December 16, 1982, P.L. 1309, *as amended*, 54 Pa.C.S. §§ 301–332.

4. Counts I and II of the Complaint allege that PBS violated the UTPCPL by unlawfully soliciting consumers in a manner that could confuse or mislead them into believing that PBS's products and/or services are sponsored by, endorsed by or affiliated with a government agency or program. Count III of the Complaint alleges that PBS misrepresented the savings associated with its products and programs. Counts IV and V of the Complaint allege that PBS violated the Telemarketing Act by failing to register as a telemarketer before initiating calls to consumers and by causing a third-party telemarketer to contact consumers who were registered on Pennsylvania's "Do Not Call" list. Counts VI–VIII of the Complaint allege that PBS failed to comply with the Fictitious Names Act, the Social Security Act and various statutes and regulations of the United States Postal Service.

5. Section 3 of the UTPCPL provides, in relevant part, that:

The Complaint seeks, *inter alia:* (1) a declaration that PBS's conduct is in violation of the UTPCPL; (2) an order permanently enjoining PBS from engaging in such conduct;[6] (3) an order requiring PBS to make full restitution to the affected consumers[7] and to pay civil penalties to the Commonwealth;[8] (4) an order requiring PBS to forfeit its right to engage in any business in the Commonwealth until the restitution and civil penalties are paid; and (5) an order requiring PBS to provide notice to the Commonwealth prior to engaging in any business in the Commonwealth. (Complaint, ¶¶ 129, 134, 139, 149, 161, 169, 182, and 195.)

On November 22, 2005, PBS filed the instant preliminary objections to the Commonwealth's Complaint, requesting that each Count of the Complaint be dismissed with prejudice. Specifically, PBS alleges that: (1) the Complaint fails to sufficiently

identify the injured parties; (2) Counts I, IV and V of the Complaint lack the specificity required by Pa. R.C.P. No. 1019(a); (3) Counts I, II, III, VI, VII, and VIII of the Complaint fail to state claims for which relief can be granted; and (4) this court lacks subject matter jurisdiction over the causes of action in Counts VII and VIII of the Complaint. We will discuss each of PBS's Preliminary Objections in turn.

### A. Identity of Injured Parties

■ PBS first argues that the Commonwealth's requests in each count of the Complaint for an order requiring PBS to make "full restitution to each and every person and/or entity which is entitled to restitution from [PBS] under the [UTPCPL],"[9] (Complaint, ¶¶ 129(E), 134(D), 139(E), 149(D), 161(D), 169(E), 182(D), 195(D)), lack the specificity required by Pa. R.C.P. No. 1019(a) and,

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause 4 of section 2 of this act . . . are hereby declared unlawful.
> 73 P.S. § 201–3.
> Section 2 of the UTPCPL provides, in relevant part, that:
> As used in this act.
> (4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:
> (i) Passing off goods and services as those of another;
> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
> . . . .
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a

> sponsorship, approval, status, affiliation or connection that he does not have;
> . . . .
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
> . . . .
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.
> 73 P.S. § 201–2(4)(i), (ii), (iii), (v), (vii) and (xxi).

6. Section 4 of the UTPCPL, 73 P.S. § 201–4.

7. Section 4.1 of the UTPCPL, added by Act of November 24, 1976, P.L. 1166, 73 P.S. § 201–4.1.

8. Section 8 of the UTPCPL, 73 P.S. § 201–8.

9. Under the UTPCPL, a court enjoining actions that violate the act may direct the defendant to "restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any violation of this act." 73 P.S. § 201–4.1.

therefore, must be dismissed.[10]

■ PBS asserts that, for restitution to be granted, Pa. R.C.P. No. 1019(a) requires that a plaintiff fully identify and describe the injured parties in the complaint and specify sums that represent the harm inflicted on each of these parties. *See Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc.,* 868 A.2d 624 (Pa.Cmwlth.2005); *Northview Motors, Inc., v. Commonwealth,* 128 Pa.Cmwlth. 54, 562 A.2d 977 (1989), *appeal denied,* 525 Pa. 605, 575 A.2d 570 (1990); *Commonwealth by Kane v. Flick,* 33 Pa.Cmwlth. 553, 382 A.2d 762 (1978). Relying on these cases, PBS maintains that the Commonwealth fails to plead sufficient facts on which to base a payment of restitution because the Complaint does not identify a single person allegedly harmed and entitled to restitution due to PBS's business practices, and the Complaint fails to specify any sums acquired by PBS in violation of the UTPCPL. We disagree.

■ Here, the Commonwealth's Complaint states that suit is brought in the public interest to enjoin PBS from continuing its unlawful business practices and on behalf of consumers harmed due to PBS's methods, acts and practices. (Complaint, ¶¶ 6–9, 124.) Described as injured parties are consumers who received PBS solicitations, (Complaint, ¶¶ 24–30), who purchased goods and services from PBS, (Complaint, ¶ 121), and who received telemarketing calls from or on behalf of PBS while enrolled on Pennsylvania's "Do Not Call" list, (Complaint, ¶¶ 110–18). The Complaint also refers to specific instances where consumers complained about PBS's misleading solicitations, (Complaint, ¶¶ 25–30), and identifies each of PBS's programs at issue in the case and for which restitution is sought.[11] We conclude that further specificity is not required at this stage of the proceedings because the facts that PBS demands to be pled, such as the precise identity of consumers who purchased its products and the amounts these consumers paid, are better known to PBS than to the Commonwealth. *Paz v. Department of Corrections,* 135 Pa.Cmwlth. 162, 580 A.2d 452 (1990), *appeal denied,* 532 Pa. 652, 615 A.2d 341 (1992) (stating that a more specific pleading should not be required as to matters about which the objecting party has, or should have, as much or better knowledge than the pleader); *see also Line Lexington Lumber & Millwork, Co., Inc., v. Pennsylvania Publishing Corp.,* 451 Pa. 154, 301 A.2d 684 (1973). Moreover, we disagree with PBS's assertion that it requires the names of consumers entitled to restitution, or the amounts to which they are entitled, in order to defend against the causes of action set forth in the Complaint. In actions brought *in the public interest,* such information is not needed to determine whether

---

10. Pa. R.C.P. No. 1019(a) provides that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." This rule requires a plaintiff to plead all the facts that must be proved in order to achieve recovery on the alleged cause of action. Moreover, the pleading must be sufficiently specific so that the defending party will know how to prepare his defense. *Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc.,* 868 A.2d 624 (Pa.Cmwlth.2005).

11. The PBS products at issue include: the Senior Security Supplement Initiative, (Complaint, ¶¶ 25, 31, 33, 55, 56, 60, 100–01), the Senior Security Prescription Plan, (Complaint, ¶¶ 22, 31, 60, 104, 121), the Senior RX Discount Program, (Complaint, ¶¶ 31, 32, 50, 60), the Senior Security Dental Plan, (Complaint, ¶¶ 69–76), the Veterans Life Family Health Plan, (Complaint, ¶¶ 62–68), the Patients Choice Dental Plan, (Complaint, ¶¶ 76–78), the Division of Health Discount Services, (Complaint, ¶¶ 85–86), and the Peoples Prescription Plan, (Complaint, ¶¶ 85–86).

PBS engaged in business practices that are unfair or deceptive under the UTPCPL, and PBS was on notice of the facts it had to refute in that regard. *See Weinberg v. Sun Company, Inc.*, 565 Pa. 612, 777 A.2d 442 (2001); *Paz*; *Line Lexington*. While it remains to be determined whether the Commonwealth can produce evidence establishing PBS's obligation to pay restitution, the details requested by PBS are evidentiary in nature and, thus, better obtained through discovery and presented at trial.[12] *Paz*; *Totani v. Lansford–Coaldale Joint Water Authority*, 2 Pa. D. & C.3d 143 (1975). Therefore, we dismiss PBS's preliminary objections based on a lack of specificity in the Commonwealth's requests for restitution.[13]

### B. Adequacy of Pleadings

PBS also argues that Counts I, IV and V of the Commonwealth's Complaint must be dismissed for failure to plead with the specificity required by Pa. R.C.P. No. 1019(a). We disagree.

### 1. Count I

In Count I, the Commonwealth alleges, *inter alia*, that PBS violated section 201–2(4)(i) of the UTPCPL, which defines as an unfair or deceptive act or practice, the "[p]assing off goods and services as those of another." PBS maintains that nowhere in Count I, or anywhere in the Complaint, does the Commonwealth specifically allege that PBS passed its goods and services off as those of another; rather, the Complaint alleges only that PBS *represented* that its products were "*sponsored by, affiliated with or endorsed by*" government agencies or programs, or legitimate, independent organizations other than PBS. (Complaint, ¶¶ 127–29.) Citing *Department of Transportation v. Shipley Humble Oil Company*, 29 Pa.Cmwlth. 171, 370 A.2d 438 (1977), PBS further asserts that this lack of specificity renders PBS incapable of developing defenses to such claims.

However, the Commonwealth's Complaint describes in great detail the manner in which PBS passed off (or represented) its goods and services as those of a government agency or program, (*see e.g.*, Com-

---

12. The cases relied on by PBS do not mandate otherwise. In *TAP Pharmaceutical*, this court found that a complaint brought by the Attorney General for violations of the UTPCPL did not meet the specificity requirements of Pa. R.C.P. No. 1019(a). We did not base our determination on the Attorney General's failure to identify the specific individuals harmed by name; rather, we determined that the complaint did not "fully describe" the injured parties. The present Complaint provides such a description. As to PBS's reliance on *Northview* and *Flick*, we note that neither case involved preliminary objections; rather, they involved appeals from common pleas court decisions to enjoin conduct that was determined to be in violation of the UTPCPL. In each case, the injunction was upheld based on witness testimony regarding the violations and the amounts acquired thereby, evidence that the Commonwealth also will need to provide at trial in the present matter.

13. PBS also objects to the Commonwealth's request for relief in the form of "[r]equiring [PBS], prior to engaging in any business in the Commonwealth, to give written notice to the Commonwealth through the Office of Attorney General, Health Care Section, as to the location of such business and the purpose of such business." (Complaint, ¶¶ 129(H), 134(G), 139(H), 149(G), 161(G), 169(H), 182(G), and 195(G)). PBS contends that, because such relief is not authorized by the UTPCPL, this court should strike these paragraphs of the Complaint for failure to conform to rules of court. *See Commonwealth v. Thier*, 444 Pa.Super. 78, 663 A.2d 225 (1995), *appeal denied*, 543 Pa. 703, 670 A.2d 643 (1996). However, because PBS only makes this argument in a footnote in its brief to this court, (PBS's brief at 6, n. 2), rather than raising the matter in its preliminary objections, we decline to consider it further. *See* Pa. R.C.P. No. 1028(b).

plaint, ¶¶ 31, 50, 59–61, 73, 101 and 128), supplies the times such conduct began, (Complaint, ¶¶ 21, 28, 49), and includes statements from some of the consumers who received the solicitations and were confused as to their source, (Complaint, ¶¶ 26–27, 29). PBS's argument to the contrary is based purely on semantics. In addition, PBS has demonstrated that the Complaint contains sufficient specificity to enable PBS to prepare a defense by framing additional objections to the claims in Count I in the form of a demurrer. *See Speck v. Finegold,* 268 Pa.Super. 342, 408 A.2d 496 (1979), *rev'd in part on other grounds,* 497 Pa. 77, 439 A.2d 110 (1981) (holding that it is inconsistent for a party to both demur to a pleading and, at the same time, move for a more specific pleading, reasoning that, if a party is able to demur, then the pleading must be specific enough for the party to understand the allegations contained therein); *see also, Nationwide Insurance Company v. Montefour,* 36 Pa. D. & C.3d 225 (1985). In the present context, it is for PBS to seek evidential details rather than clarification. *Speck.*

### 2. Counts IV and V

■ PBS argues that Counts IV and V must be dismissed because the Commonwealth fails in those Counts to adequately distinguish between defendants and their alleged wrongdoings. Count IV of the Complaint alleges that PBS violated the Telemarketing Act by failing to register as a telemarketer,[14] or post the necessary surety bond,[15] before it initiated or received calls to or from consumers. Count V of the Complaint alleges that PBS violated the Telemarketing Act, either directly or through Phase One, a third-party telemarketer acting on behalf of PBS, by failing to obtain a list of subscribers to Pennsylvania's "Do Not Call" List, and by contacting consumers who were registered on the "Do Not Call" List.[16] Section 6(a) of the Telemarketing Act, 73 P.S. § 2246(a). (Complaint, ¶¶ 143–48; 152–60). The Complaint also alleges that these actions were *per se* violations of section 201–2(4) of the UTPCPL.

Noting that the Complaint acknowledges that Phase One, not PBS, "made telephone solicitation calls" to consumers, (Complaint, ¶ 154), PBS asserts that the Commonwealth's failure to specify the alleged violations attributable to PBS or identify *any particular* calls made by PBS in violation of the Telemarketing Act, prevents PBS from defending against such allegations. *Commonwealth v. Percudani,* 844 A.2d 35 (Pa.Cmwlth.2004), *opinion amended on reconsideration,* 851 A.2d 987 (Pa. Cmwlth.2004).

However, in Count IV (failure to register as a telemarketer), the Commonwealth sets forth the statutory provisions requiring a business to register as a telemarketer, (Complaint, ¶¶ 141–42), describes the activities of PBS triggering these provisions, (Complaint, ¶¶ 143–45), and attaches solicitations to the Complaint in which the toll-free numbers used by PBS in its telemarketing activities are displayed. (Complaint, Exhs. J, L, P, and R.) In addition, in Count V (failure to obtain or abide by the "Do Not Call" list), the Commonwealth alleges that Phase One was retained by PBS to make telemarketing calls on its behalf. (Complaint, ¶¶ 108–18, 149–61.) Because the Telemarketing Act imposes

---

**14.** Sections 3(a) and (b) of the Telemarketing Act, 73 P.S. §§ 2243(a) and (b).

**15.** Section 4(b) of the Telemarketing Act, 73 P.S. § 2244(b).

**16.** Section 5.2(a) of the Telemarketing Act, added by Act of April 2, 2002, P.L. 221, *as amended,* 73 P.S. § 2245.2(a).

responsibility and liability for calls made in violation of the "Do Not Call" provisions, not only on the entity making the call, but also on the entity causing the calls to be initiated,[17] allegations regarding Phase One's activities do not diminish the sufficiency of the Commonwealth's pleadings with respect to PBS's activities in violation of the Telemarketing Act. Thus, Counts IV and V contain specific allegations necessary to set forth claims that PBS violated the Telemarketing Act by failing to register as a telemarketer and by causing calls to be initiated to consumers enrolled on the "Do Not Call" list.

### C. Failure to State a Claim

PBS next contends that each of the causes of action set forth in Counts I, II, III, VI, VII, and VIII of the Complaint fails to state a claim upon which relief can be granted and, therefore, must be dismissed.[18]

### 1. Count I

Count I alleges that PBS engaged in deceptive and misleading representations concerning the sponsorship, endorsement or affiliation of its goods and services. PBS argues that this Count fails in its entirety to state a claim under the UTPCPL because, as shown in the attachments to the Complaint, PBS mailings contain conspicuous disclaimers clearly stating that PBS services are *not* affiliated with any government agency, and, therefore, PBS did not misrepresent its goods and services in this regard. *See Common-*

*wealth by Zimmerman v. National Apartment Leasing Company,* 102 Pa.Cmwlth. 623, 519 A.2d 1050 (1986).

Our supreme court has directed that the UTPCPL is to be construed liberally to effectuate its objective of protecting consumers of this Commonwealth from fraud and unfair or deceptive business practices. *Commonwealth by Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974). To this end, our courts have held that in order to state a claim under the UTPCPL, a plaintiff must allege that the defendant committed one of the unfair or deceptive practices set forth in the statute. *Romeo v. Pittsburgh Associates,* 787 A.2d 1027 (Pa.Super.2001), *appeal denied,* 568 Pa. 722, 797 A.2d 915 (2002); *Feeney v. Disston Manor Personal Care Home, Inc.,* 849 A.2d 590 (Pa.Super.), *appeal denied,* 581 Pa. 691, 864 A.2d 529 (2004). In this case, the Complaint alleges that PBS acted in violation of specific UTPCPL provisions, and the Commonwealth details numerous instances where PBS used solicitations and advertisements containing unregistered fictitious names, as well as wording, logos and express or implied representations that could reasonably be interpreted to be that of a government agency or which could give the impression that PBS's goods or services are somehow endorsed by or connected to a government agency or program. The Commonwealth further alleges that any disclaimers by PBS fail to provide sufficient consumer information or protection. (Complaint, ¶ 119.) If these

---

17. Section 5.2(b) of the Telemarketing Act, added by Act of April 2, 2002, P.L. 221, *as amended,* 73 P.S. § 2245.2(b).

18. The standard for reviewing preliminary objections in the nature of a demurrer is limited. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom, but not conclusions of law, are deemed admitted as true. The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. When any doubt exists as to whether a demurrer should be sustained, this doubt should be decided in favor of overruling the preliminary objection. *McMahon v. Shea,* 547 Pa. 124, 688 A.2d 1179 (1997).

contentions are sustained at trial, then a fact finder could conclude that PBS's solicitations violate the UTPCPL. Thus, at this stage of the proceedings, the Commonwealth's pleadings are sufficient to withstand PBS's demurrer to Count I.

### 2. Counts II and III

 Count II of the Complaint alleges, *inter alia*, that PBS violated sections 201–2(4)(ii), (iii), (v) and (xxi) of the UTPCPL by misrepresenting that: (1) recipients of PBS solicitations are entitled to federal or state benefits that they are not receiving; and (2) there are limitations on the duration of or eligibility for PBS's offers.[19] (Complaint, ¶ 132.) Count III of the Complaint alleges, *inter alia*, that PBS violated sections 201–2(4)(vii) and (xxi) of the UTPCPL by misrepresenting the savings to be had by consumers purchasing PBS's goods and services. (Complaint, ¶ 137.)

PBS argues that Count II (misrepresentation as to the source and availability of PBS's products) and Count III (misrepresentation as to the savings from PBS's products) both must be dismissed as legally insufficient. Relying on *Chatham Rac-*

*quet Club v. Commonwealth by Zimmerman*, 116 Pa.Cmwlth. 55, 541 A.2d 51 (1988), *appeal denied*, 527 Pa. 604, 589 A.2d 694 (1991). PBS contends that to sustain a cause of action under the UTPCPL, the Commonwealth must allege that PBS was, in fact, engaged in fraudulent or deceptive trade practices. According to PBS, the Commonwealth fails to allege facts in its Complaint establishing that the statements in its solicitations are factual misrepresentations or how these representations could deceive or confuse consumers. In fact, PBS asserts that the statements in Count II are true, i.e., there are federal or state benefits that recipients are entitled to but not receiving, and there are limits in duration of PBS offers or consumer eligibility for those offers. Similarly, PBS contends that the Commonwealth admits to the accuracy of the stated savings in Count III. (Complaint, ¶¶ 86–87.)[20] Moreover, PBS argues that the Complaint alleges only that consumers "may not" see such savings, (Complaint, ¶ 98), whereas a claim under the UTPCPL requires that the alleged practices must result in a violation "in all circum-

---

**19.** In Count II of the Complaint, the Commonwealth also alleges that PBS violated the UTPCPL by representing that: (1) PBS's discount cards, programs and/or memberships are insurance products; and (2) PBS's solicitations are, or contain information from, a health care provider. (Complaint, ¶ 132.) PBS argues that the Complaint also fails to state a claim with respect to these allegations because they are clearly contradicted by disclaimers in PBS mailings. In addition, PBS asserts that the allegation that PBS represented its programs as insurance products is a cause of action under section 5(a)(2) of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. § 1171.5(a)(2), and, therefore, cannot be maintained under the UTPCPL. Once again, however, PBS makes these arguments, not in its preliminary objections, but only in its brief

to this court. Thus, we will not consider them. *See* Pa. R.C.P. No. 1028(b).

**20.** We note our disagreement with PBS's reading of the Complaint, ¶¶ 86–87, which state as follows:

86. The solicitations frequently contain representation of moneys saved by consumers such as "Over $380,000,000 saved already—Shouldn't you be saving too?" (Exhibit Q.)
87. Notwithstanding the use of these savings claims to market goods and services under distinct and different names, the Commonwealth believes that the savings claims contained in [PBS's] solicitations do not represent the savings for the particular good or service being offered, but, instead are aggregate amounts relating to all goods and services offered by [PBS].

stances."[21] *Monumental Properties.*

However, PBS appears to forget that for the purpose of a demurrer, all facts and reasonable inferences in the Commonwealth's Complaint are admitted as true. *McMahon.* Here, the Commonwealth has alleged that certain conduct by PBS giving rise to Count II is false, unfair, deceptive and misleading, and that such actions constitutes unfair or deceptive practices as defined in §§ 201–2(4)(ii), (iii), (v) and (xxi) of the UTPCPL. *See Regina Corp. v. F.T.C.,* 322 F.2d 765 (3d Cir.1963); *Miller v. American Family Publishers,* 284 N.J.Super. 67, 663 A.2d 643 (Ch.Div.1995) (holding that deception need not be an outright false statement; representations of implied claims that are false is deceptive even if the explicit claims are true). In addition, in Count III, the Commonwealth's Complaint alleges that PBS misrepresented the savings associated with its products through various statements and misrepresentations, (Complaint, ¶¶ 86–98), and has demonstrated in its pleadings that such conduct constitutes unfair or deceptive practices as defined by § 201–2(4)(vii) and (xxi) of the UTPCPL. Because the pleadings are legally sufficient to set forth these violations of the UTPCPL, both Count II and Count III withstand PBS's demurrer.[22]

### 3. Count VI

Count VI of the Complaint alleges that PBS failed to register names it uses in its marketing and advertising as fictitious names with the Pennsylvania Department of State, thereby violating the Fictitious Names Act, 54 Pa.C.S. § 303(b)(1),[23] and sections 201–2(4)(ii), (iii), (v) and (xxi) of the UTPCPL. (Complaint, ¶¶ 163–68).

■■■■ PBS argues that Count VI must be dismissed as legally insufficient because to sustain a claim pursuant to section 201–2(4)(v) and, by analogy, sections 201–2(4)(ii) and (iii) of the UTPCPL, the Commonwealth must plead that the alleged wrongdoing is in connection with false advertising that deceives and influences the purchaser's decision. *Percudani.* According to PBS, because the purpose of the Fictitious Names Act is merely to protect persons dealing with businesses by identifying the owners, *Fremd v. Horne,* 10 Pa. D. & C. 4th 321 (1990), rather than to

**21.** We do not accept PBS's reading of *Monumental Properties.* In that case, the court agreed that the Commonwealth failed to state a cause of action under the UTPCPL where it alleged that the use of unenforceable lease provisions misled the consumer. However, central to that ruling was the fact that "[a]s pleaded, the predicate for the Commonwealth's theory is that the provisions are unenforceable in all circumstances" and, as a matter of law, that was not the case. *Id.* at 482, 329 A.2d at 828. Here, the Commonwealth's claims against PBS are not so limited.

**22.** Contrary to PBS's argument, *Chatham Racquet Club* supports this position. In that case, the trial court, after consideration of the Attorney General's complaint against a health club for violations of the UTPCPL, enjoined certain actions of the health club. On appeal, this court considered whether the trial court had jurisdiction to issue the injunction based on the actions complained of. We determined that, *because the Attorney General's complaint alleged that the health club's actions violate the UTPCPL, the trial court had jurisdiction to decide whether the Attorney General could prove such a claim.* However, because the trial court made no findings that the health club's actions were fraudulent, we vacated the injunction and *remanded for a trial on the merits of the Attorney General's request for an injunction.* We do the same here by overruling PBS's demurrer and allowing the merits of the Complaint to be considered.

**23.** Pennsylvania law requires businesses to register as a fictitious name "[a]ny assumed or fictitious name, style or designation other than the proper name of the entity using such name." 54 Pa.C.S. §§ 302; 303(B)(1).

prohibit false advertising and fraudulent communications directed to consumers, the Commonwealth cannot sustain a claim for *per se* violations of the UTPCPL merely by alleging PBS's failure to register under the Fictitious Names Act. PBS claims that this is particularly true where the absence of a registered fictional name has no bearing on a consumer's purchasing decision. *See DiLucido v. Terminix International, Inc.*, 450 Pa.Super. 393, 676 A.2d 1237, *appeal denied*, 546 Pa. 655, 684 A.2d 557 (1996).

Courts of this Commonwealth have held that violations of the Fictitious Names Act and other consumer protection related statutes constitute violations of the UTPCPL, *Commonwealth v. Armstrong*, 74 Pa. D. & C.2d 579 (1974). However, relying on *Percudani*, PBS takes the position that the Commonwealth failed to allege, and must allege, that the alleged violative conduct occurred in the context of advertising. While this may be true in connection with a violation of section 201–2(4)(v) of the UTPCPL, *Percudani* does not impose similar requirements on claims brought under UTPCPL section 201–2(4)(ii), (iii) or (xxi), on which Count VI also is based.

In any event, because the Complaint generally involves marketing practices and solicitations, there clearly are sufficient representations that the alleged wrongful conduct occurred in the context of advertising. In fact, the Commonwealth alleges, and exhibits support the fact, that PBS used unregistered fictitious names in its solicitations and ads. (e.g., Complaint, ¶¶ 55, 164; exh. A, G, I, and K.) Here, the Commonwealth's Complaint illustrates PBS's numerous instances of noncompliance with the Fictitious Names Act and, as a statute designed to protect consumers, violations of this law also constitute violations of the UTPCPL. *Armstrong.*

Therefore, because the Commonwealth has sufficiently alleged these violations in its pleadings, Count VI withstands PBS's demurrer.

### 4. Counts VII—VIII

■ Count VII of the Complaint alleges, *inter alia*, that PBS used words, symbols or emblems in its advertisements and solicitations that could lead one to believe that such advertisement or solicitation was endorsed by the Social Security Administration or that PBS had a connection with, or authorization from, the Social Security Administration. The Commonwealth alleges that, through these actions, PBS violated section 1140 of the Social Security Act, 42 U.S.C. § 1320b–10, and sections 201–2(4)(ii), (iii), (v) and (xxi) of the UTPCPL. (Complaint, ¶¶ 175–81.)

Count VIII of the Complaint alleges that PBS mailed solicitations using terms or symbols that could be construed as having a federal government connection without the requisite disclaimers. The Commonwealth alleges that, through these actions, PBS violated statutory and regulatory provisions of the United States Postal Service prohibiting non-governmental entities from soliciting for the purchase of or payment for products or services that reasonably could be interpreted or construed as implying any federal government connection, 39 U.S.C. § 3001(h); 39 C.F.R. § 111.1, and PBS also violated sections 201–2(4)(ii), (v) and (xxi) of the UTPCPL. (Complaint, ¶ 189–94.)

PBS argues that Counts VII and VIII must be dismissed as legally insufficient because they both depend on a violation of federal law. With respect to Count VII, PBS asserts that the Complaint alleges only that PBS used terms and symbols "similar" to those used by the Social Security Administration, and the Commonwealth has failed to allege that PBS used

any words or symbols that *actually* are prohibited by section 1140 of the Social Security Act.[24] Further, PBS contends that the Commonwealth failed to allege that PBS used a symbol or emblem of the Social Security Administration in its products.[25]

With respect to Count VIII, PBS again contends that its mailings contain the requisite disclaimers indicating that PBS is not affiliated with the Social Security Administration or any government agency and that the Commonwealth fails to specify how solicitations with such conspicuous disclaimers could reasonably imply a federal government connection, as prohibited by 39 U.S.C. § 3001(h).[26]

However, as previously stated, Pennsylvania courts have upheld claims brought under the UTPCPL for violations of other consumer-related statutes. These decisions have repeatedly stated that the UTPCPL must be liberally construed to cover generally *all* unfair and deceptive acts or practices in the conduct of trade or commerce. *See e.g., Monumental Properties; Keller v. Volkswagen of America, Inc.,* 733 A.2d 642 (Pa.Super.1999); *Wallace v. Pastore,* 742 A.2d 1090 (Pa.Super.1999), *appeal denied,* 564 Pa. 713, 764 A.2d 1071 (2000). For preliminary objection purposes, we do not accept the legal conclusion that PBS violated the Social

---

**24.** In relevant part, section 1140 states that no solicitation may use the words:

> "Social Security", "Social Security Account", "Social Security System", "Social Security Administration", "Medicare", "Centers for Medicare & Medicaid Services", "Department of Health and Human Services", "Health and Human Services", "Supplemental Security Income Program", "Medicaid", "Death Benefits Update", "Federal Benefit Information", "Funeral Expenses", or "Final Supplemental Plan", the letters "SSA", "CMS", "DHHS", "HHS", or "SSI", or any other combination or variation of such words or letters, or . . . a symbol or emblem of the Social Security Administration, Centers for Medicare & Medicaid Services, or Department of Health and Human Services . . .

42 U.S.C. § 1320b–10(a)(1). PBS notes that the phrase alleged to have been misused in PBS solicitations, ("Senior Security Supplement"), is not on the prohibited list; and, because it includes the word "senior", which is not on the list of proscribed words, the phrase is not a "combination or variation" of prohibited phrases. Further, the Commonwealth does not allege that PBS used a prohibited symbol or emblem of the Social Security Administration or other agency.

**25.** According to PBS, the emblem attached is clearly distinguishable from the emblem used by the Social Security Administration. (*See* Complaint, exh. 3.) PBS also asserts that the

Social Security Act does not prohibit the use of "similar" emblems, but only use of the actual emblems or a variation thereof. *See* 42 U.S.C. § 1320b–10(a)(1)(B). Moreover, PBS maintains that because "a conspicuously placed disclaimer of affiliation with the Social Security Administration could avoid the need for action under [Section 1320b–10]," PBS's disclaimers on all of its solicitations undermine any allegation that PBS's solicitations violate the Social Security Act.

**26.** In making this argument, PBS relies on *United Commercial Insurance Services v. United States Postal Service,* 650 F.Supp. 592 (D.D.C.1986), in which the court construed the same statutory language contained in 39 U.S.C. § 3001(h). The issue was whether the record contained substantial evidence to support the judicial officer's determination that the plaintiff's solicitations *to accounting businesses* could reasonably be construed as invoices or bills in violation of 39 U.S.C. § 3001(d). In concluding that the solicitations did not violate the statute, the court stated that, in judging such mailings, the standard was not whether the mailing had the propensity to confuse or mislead the careless but, rather, whether the solicitation might reasonably be misconstrued. We must conclude that this case has no bearing on the present situation, where PBS's solicitations were mailed to *household consumers* and, more importantly, where we are at the preliminary objection stage of the proceedings.

Security Act or Postal Regulations;[27] rather, we look at the facts alleged to determine whether they state a claim under any legal theory. *Koken v. Steinberg,* 825 A.2d 723 (Pa.Cmwlth.), *appeal quashed,* 575 Pa. 103, 834 A.2d 1103 (2003); *Foster v. Peat Marwick Main & Co.,* 138 Pa.Cmwlth. 147, 587 A.2d 382 (1991), *aff'd,* 544 Pa. 387, 676 A.2d 652 (1996). Because the pleadings here are legally sufficient to set forth a violation of the UTPCPL and effectuate its purpose of covering all unfair or deceptive acts and practices, Counts VII and VIII also withstand PBS's demurrer.

### D. Subject Matter Jurisdiction

PBS argues that the Commonwealth lacks subject matter jurisdiction over the UTPCPL actions raised in Counts VII and VIII for alleged violations of the Social Security Act and Postal Regulations because the allegations therein are claims of fraud on the agency, which are preempted by federal law.[28] PBS notes that the United States Social Security Administration and the United States Postal Service have jurisdiction to prosecute violations of the Social Security Act and postal regulations, 42 U.S.C. § 1320b–10(b); 39 U.S.C. § 3001(m), and PBS asserts that, where

there is such jurisdiction, particularly in the context of fraud on the agency, a claim cannot be sustained under the UTPCPL. *Zwiercan v. General Motors Corp.,* 58 Pa. D. & C. 4th 251 (2002) (holding that a UTPCPL action seeking redress for misstatements to the National Highway Safety Administration is a 'fraud on the agency' claim preempted by federal law). We disagree.

Rather than bringing a claim of fraud on the agency and seeking redress on that basis, the Commonwealth's Complaint is based upon a violation of state law. Specifically, the Commonwealth asserts that PBS's alleged noncompliance with these federal laws and regulations are *per se* violations of the UTPCPL in that they constitute unfair or deceptive acts or practices deemed unlawful under the UTPCPL, over which this court has jurisdiction. *See Percudani; Iron and Glass Bank v. Franz,* 9 Pa. D. & C.3d 419 (1978).

PBS argues that neither *Iron & Glass Bank* nor *Percudani* support the Commonwealth's position because those cases deal with violations of acts other than the Social Security Act and postal laws and regulations.[29] Although it is true that nei-

---

27. However, we note that the Commonwealth alleges that PBS used the identical name and logo that already prompted issuance of a cease and desist notice from the Social Security Administration to Peoples Benefit Insurance Company, a company closely affiliated with PBS and who shares offices with PBS, in connection with use of the name "Senior Security Supplement." (Complaint, ¶¶ 39–44, exh. H.)

28. The test for determining whether a court has jurisdiction of the subject matter is *whether the court is competent to determine controversies of the general class to which the case presented belongs. Texas Keystone, Inc. v. Pennsylvania Department of Conservation and Natural Resources,* 851 A.2d 228 (Pa. Cmwlth.2004).

29. PBS asserts that essential to the rationale in *Iron and Glass* was that the UTPCPL is based upon the Federal Trade Commission Act, 15 U.S.C. §§ 41–58, and Lanham Trade Mark Act, 15 U.S.C. §§ 1051–1127, the same statutes under which the plaintiff was alleging a *per se* violation of the UTPCPL. Similarly, PBS maintains that, in *Percudani,* the court addressed violations of the Federal Truth-in Lending Act, 15 U.S.C. §§ 1610–1693(r), and Regulation Z, 12 C.F.R. §§ 226.1–226.36, (allegations that the defendants made false statements and omissions in violation of the federal acts and directly to consumers), which are violations of distinctly different nature than those alleged in Counts VII and VIII of the Commonwealth's Complaint, (purported unauthorized use of the Social Security Administration's name and symbols).

ther case relied on by the Commonwealth considered such violations, federal and state courts have dealt with the issue. For example, in *Commonwealth ex rel. Cowan v. Telcom Directories, Inc.*, 806 S.W.2d 638 (Ky.1991), the supreme court of Kentucky ruled on the precise issue presented here, i.e., whether that state's consumer protection act was preempted by the United States Postal Service laws and regulations dealing with nonmailable materials, and rejected the argument.

■ In *Cowan*, the state attorney general filed a complaint against a publisher, alleging that, through direct mail solicitations designed to appear as invoices, the publisher engaged in a course of conduct that was unfair, misleading and deceptive, in violation of Kentucky's consumer protection act. Although referencing the requirements of the United States Postal Service in 39 U.S.C. § 3001(d) (providing that matter which could reasonably be interpreted as a bill or invoice is unmailable), the complaint sought relief based only upon a violation of state law. Initially, the state trial court entered summary judgment in favor of the attorney general; however, the state court of appeals reversed, concluding that the trial court lacked jurisdiction over the matter by reason of federal preemption. Although agreeing that 39 U.S.C. § 3001(d) contains no express preemptive language, the court of appeals determined that the federal postal statutes and regulations at issue evidenced the intent of Congress to legislate comprehensively in this area of consumer protection.[30] The Kentucky supreme court disagreed.

The supreme court first noted that "[c]onsumer protection is of historically recent origin and an area traditionally occupied and regulated by the various states." *Cowan*, 806 S.W.2d at 640. As a result, there existed the presumption that the states' police powers were not to be superseded by a federal act, and the burden of overcoming that presumption fell to the publisher. The court also emphasized that Kentucky's consumer protection act, like the UTPCPL here, has been given broad construction and application in order to give consumers the most protection possible. The court then compared the federal and state statutes and determined that because they regulated different subject matter, provided for different remedies and did not conflict, the state trial court was not deprived of jurisdiction by federal preemption. Finally, the court noted that its result was consistent with other federal and state cases. Here, PBS has offered no contrary authority, and because we agree with the analysis applied in *Cowan*, we apply it in the present case. Accordingly, we dismiss PBS's preliminary objections to Counts VII and VIII based on subject matter jurisdiction.

Taking the pleadings in the Commonwealth's Complaint as true for purposes of PBS's preliminary objections, we conclude that the pleadings state legally sufficient claims against PBS, are sufficiently specific to enable PBS to prepare a defense to the stated claims, properly set forth the relief sought in the action, and are well within the jurisdiction of this court. Accordingly, we dismiss PBS's preliminary objections, and we direct PBS to file an answer to the Commonwealth's Complaint.

**30.** Generally, preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), or, *inter alia*, where Congress has legislated comprehensively, thus occupying the entire field of regulation and leaving no room for states to supplement federal law, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

*ORDER*

AND NOW, this 28th day of March, 2006, we dismiss the preliminary objections filed by Peoples Benefit Services, Inc., (PBS) to the Complaint filed by Commonwealth of Pennsylvania, Acting by Attorney General Thomas W. Corbett, Jr., and we direct PBS to file an answer to the Complaint within thirty days from the date of this order.