IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antonio D. Ferguson, :
                    Petitioner :
                                :
        v.                      : No. 310 M.D. 2022
                                : Submitted: April 21, 2023
Pennsylvania Department of      :
Corrections, Secretary's        :
Office of Inmate Grievances     :
& Appeals,                      :
                    Respondents :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE DUMAS                          FILED:  November 30, 2023


        Antonio D. Ferguson (Petitioner) has filed a petition for review in this Court's original jurisdiction.  Petitioner requests that an adverse disciplinary decision reached by the Department of Corrections (Department) be rescinded.  In response, the Department has filed preliminary objections asserting this Court's lack of jurisdiction.  To the extent the Department asserts this Court's lack of appellate jurisdiction, we sustain the Department's preliminary objection.  Nevertheless, after careful review, we *sua sponte* conclude that Petitioner has failed to invoke this Court's original jurisdiction.  Accordingly, we dismiss the petition for review with prejudice.[1]

---

[1] The Department also objected to improper service; however, after this Court directed Petitioner to effectuate proper service and he complied, we overruled the preliminary objection to improper service.  *See* Order, 10/3/22.

# I. BACKGROUND[2]

Petitioner is an inmate at the State Correctional Institution at Phoenix (SCI-Phoenix), where he was assigned to a work program. At some point during his incarceration, Petitioner was reassigned from one housing block to another. When he attempted to enter the new housing block, he received a Class I misconduct. Petitioner filed a grievance, and a hearing occurred at which a correctional officer testified that Petitioner did in fact have permission to enter that housing block. Thereafter, Petitioner was exonerated of the misconduct.[3]

At some point during this process, Petitioner was removed from his work assignment and filed a grievance regarding that removal. He claims that on April 29, 2022, he received a final appeal determination, informing him that his employment in the work program was not in the best interest of the security of the facility.

Subsequently, Petitioner timely filed the instant petition for review, addressed to this Court's original jurisdiction, contending that the Department denied him due process by removing him from his work program. *See* Pet. for Rev. at 1-5. According to Petitioner, he has a liberty interest in continued employment at his work assignment.[4] *See id.* Additionally, Petitioner claims that he has a liberty interest in "gaining his freedom from incarceration," and that his removal from the

---

[2] We base the statement of facts on those alleged in the petition for review. *See* Pet. for Rev., 5/27/22. Unfortunately, Petitioner has not included any supporting documentation to support his scant pleadings. Accordingly, it is difficult to determine an exact chronology of events or even specific details supporting the instant petition.

[3] While unclear from Petitioner's pleadings, we infer from his brief that Petitioner has been assigned to a disciplinary housing unit. *See* Pet'r's Br. at 3, 5. There is no indication, in his pleadings or his brief, that Petitioner's assignment to a disciplinary housing unit is related to the exonerated misconduct.

[4] Case law suggests that Petitioner has a property right, rather than a liberty interest, in a prison work assignment. *See Bush v. Beach*, 1 A.3d 981, 984 (Pa. Cmwlth. 2010).

work detail could potentially affect a pending application for commutation. *See id.* at 3. Petitioner seeks reinstatement to his work program as well as awarded back pay and bonuses. *See id.* at 5.

In response, the Department filed preliminary objections, arguing that Petitioner's claims should be dismissed for lack of jurisdiction because he is attempting to appeal a grievance outcome, which this Court does not have jurisdiction to consider. *See* Prelim. Objs., 8/5/22, ¶¶ 6-7.

## II. DISCUSSION

When reviewing preliminary objections to petitions for review in our original jurisdiction, we "must treat as true all well-pleaded, material and relevant facts together with any reasonable inference[s] that can be drawn from those facts." *Cnty. of Berks v. Pa. Off. of Open Recs.*, 204 A.3d 534, 539 n.7 (Pa. Cmwlth. 2019) (citations omitted). We are not required to accept as true "conclusions of law, unwarranted inferences from facts, expressions of opinion or argumentative allegations." *See id.* "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).

### A. Appellate Jurisdiction

The Department asserts that Petitioner's claims should be dismissed for lack of jurisdiction. *See* Prelim. Objs., ¶¶ 6-7. According to the Department, to the extent Petitioner seeks appellate review of a grievance outcome, those claims should be dismissed for a lack of jurisdiction. *See id.* We agree. The resolution of inmate grievances is "purely internal to the [Department] and does not function on the level

3

of a government agency" such that appellate review is appropriate.[5] *See Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 358 (Pa. 1998).

## B. Original Jurisdiction

In its brief, while maintaining its position that Petitioner seeks to appeal a grievance outcome, the Department asserts further that Petitioner's claim does not sound in this Court's original jurisdiction, observing that inmates lack a property right in keeping a prison job. *See* Dep't's Br. at 7.[6] In response, Petitioner continues to assert a violation of his constitutional rights but fails to develop a cohesive due process argument directed to this Court's original jurisdiction, instead stating "appellate review is necessary to remedy unreasonable wrongs." Pet'r's Br. at 5.

In our view, the Department's preliminary objections do not address adequately the substance of Petitioner's petition, which purports to allege a violation of his right to procedural due process. *See* Pet. for Rev. at 1-5; Dep't's Br. at 6-7. Although the Department addresses this claim in a cursory manner, the brief does not address our jurisdiction in any detailed analysis. As the Rules of Civil Procedure

---

[5] As noted by the dissent, this Court issued an order indicating that we would consider this petition as addressed to this Court's original jurisdiction. *See* Order, 7/11/22. Nevertheless, in this preliminary objection, the Department avers a lack of appellate jurisdiction. Prelim. Objs., ¶ 7 ("This Court lacks jurisdiction over the instant matter because Petitioner is attempting to *appeal* a grievance outcome . . . .") (emphasis added). In support of its preliminary objection, the Department cites relevant precedent addressing the Court's appellate jurisdiction. *See id.* (citing *Shore v. Pa. Dep't of Corr.,* 168 A.3d 374, 380 (Pa. Cmwlth. 2017) ("[T]his Court lacks jurisdiction to review the factual findings and/or legal conclusions of the Chief Grievance Officer with respect to her denial of Shore's grievances."); *Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 358 (Pa. 1998) (recognizing that inmate grievances and misconduct appeals are not subject to this Court's appellate review); and *Portalatin v. Dep't of Corr.*, 979 A.2d 944, 949 (Pa. Cmwlth. 2009) ("[T]his Court does not have appellate jurisdiction over inmate appeals from grievance tribunals.")).

[6] Briefing an issue, without sufficiently articulating it in preliminary objections, is insufficient to preserve it for our review. *See* Pa.R.Civ.P. 1028(b); *see also Com. ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 895 A.2d 683, 690 n.13 (Pa. Cmwlth. 2006) (arguments made in brief, not preliminary objections, would not be considered).

require, preliminary objections must state specifically the grounds upon which relief is sought. *See* Pa.R.Civ.P. 1028(b); *see also Peoples Benefit Servs., Inc.*, 895 A.2d at 690 n.13.

However, this does not end our inquiry. The original jurisdiction of this Court is unique. It is wholly statutory and narrowly circumscribed. *See* 42 Pa.C.S. § 761; *see also id.* §§ 762-764.[7] "The conferral of original and exclusive jurisdiction creates subject-matter jurisdiction in the Commonwealth Court for the specified classes of claims." *Scott v. Pa. Bd. of Prob. & Parole*, 284 A.3d 178, 186 (Pa. 2022). "[S]ubject-matter delineations must be policed by the courts on their own

---

[7] Section 761(a) of the Judicial Code provides:

(a) General rule.--The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

    (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

        (i) actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court;

        (ii) eminent domain proceedings;

        (iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);

        (iv) actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act; and

        (v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

    (2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.

    (3) Arising under Article V of the act of May 17, 1921 (P.L. 789, No. 285), known as "The Insurance Department Act of 1921."

    (4) Original jurisdiction of which is vested in the Commonwealth Court by any statute hereafter enacted.

42 Pa.C.S. § 761(a).

initiative even at the highest level." *Id.* (cleaned up).[8] Accordingly, we may consider whether a litigant has invoked this Court's original jurisdiction *sua sponte*.[9] *See, e.g.*, *Reese v. Adamson*, 146 A. 262, 263 (Pa. 1929) (advising that a court shall not consider a declaratory judgment matter unless satisfied that its jurisdiction has been invoked).[10]

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Procedural due process

---

[8] "The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs." *Blount v. Phila. Parking Auth.*, 965 A.2d 226, 229 (Pa. 2009) (citation omitted). It presents a "fundamental issue of law" that we may raise *sua sponte*. *Id.*

[9] The Dissent has eloquently set forth fundamental principles of subject matter jurisdiction. There can be no doubt that this Court has subject matter jurisdiction over this general class of controversy. However, absent from the Dissent's analysis is an adequate recognition that a litigant must first invoke this Court's jurisdiction before we may consider this class of controversy. To the Dissent's further point, which properly advises against a wanton display of judicial advocacy, we note that this is a principle that applies equally to the benefit or detriment of a party. Thus, the Court should not entertain claims that clearly fall outside the limited, original jurisdiction of this Court.

[10] We cite to *Reese* to highlight that this settled principle is longstanding despite predating Title 42, which includes the Declaratory Judgments Act. More recent examples abound. *See, e.g.*, *RT Partners, LP v. Allegheny Cnty. Off. of Prop. Assessment* (Pa. Cmwlth., No. 637 C.D. 2022, 638 C.D. 2022, 639 C.D. 2022, filed September 11, 2023) (considering whether a taxpayer invoked trial court's original jurisdiction in declaratory judgment action) (citing *Reese*, 146 A. at 263); *Gulnac v. S. Butler Sch. Dist.*, 587 A.2d 699, 701 (Pa. 1991); *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019)); *Romig v. Mifflin Cnty. Tax Claim Bureau* (Pa. Cmwlth., No. 1138 C.D. 2021, filed August 10, 2023) (inquiring whether the trial court had original jurisdiction to consider a tort claim for damages in the context of a real estate tax sale law) (citing *Alpini v. Workers' Comp. Appeal Bd. (Tinicum Twp.)*, 294 A.3d 307, 322 (Pa. 2023)). *Cf. Wagner v. Anzon, Inc.*, 684 A.2d 570, 575 (Pa. Super. 1996). *See also, e.g.*, *Rosario v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 474 M.D. 2020, filed November 29, 2022) (considering this Court's original jurisdiction where petitioner's claim sounded in trespass) (citing *Stackhouse v. Pa. State Police*, 832 A.2d 1004, 1008 (Pa. 2003); and *Hill v. Dep't of Env't Prot.*, 679 A.2d 773, 774 (Pa. 1996)). We may cite memorandum opinions of this Court for their persuasive value. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

rights are triggered by deprivation of a legally cognizable liberty interest." *Brown v. Blaine*, 833 A.2d 1166, 1172 (Pa. Cmwlth. 2003). "If, and only if, the party establishes the deprivation of a protected interest, will the Court consider what type of procedural mechanism is required to fulfill due process." *See Shore v. Pa. Dep't of Corr.*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017).

In the context of prison litigation, "the Department's decisions regarding inmate misconduct convictions generally fall outside the scope of our original jurisdiction, even where a prisoner's constitutional rights have allegedly been violated." *Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1270 (Pa. Cmwlth. 2021), *aff'd*, 283 A.3d 196 (Pa. 2022). However, a prisoner may invoke our original jurisdiction by identifying an interest not limited by Department regulations and affected by a final Department decision. *See Feliciano*, 250 A.3d at 1275. A procedural due process violation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[11] *See id.* at 1275-76 (citing *Brown*, 833 A.2d at 1172). If a petitioner cannot show such a violation, then the disciplinary decision is "not an adjudication subject to this Court's review and therefore falls outside the scope of our original jurisdiction." *See id.* at 1275 (citing *Bronson*, 721 A.2d at 359).

Instantly, Petitioner argues that he has a protected interest in his continued employment at his work assignment. *See generally* Pet. for Rev. He contends that his removal from his work assignment, after the original misconduct was resolved in his favor, was a violation of due process. *See id.* at 3-4. Petitioner

---

[11] This is in contrast to lesser restraints on a prisoner's freedom, which are deemed to fall "within the expected perimeters of the sentence imposed by a court of law." *Brown*, 833 A.2d at 1172 (cleaned up).

contends that the Department failed to follow its own procedures in removing him from the work program. *See id.*

We are not prepared to recognize a procedural due process claim herein. It is well settled that a prisoner has no property right in "keeping a prison job." *See Bush v. Veach*, 1 A.3d 981, 984 (Pa. Cmwlth. 2010) (citing *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975) (holding that an inmate's expectation of keeping a particular prison job does not amount to either a "property" or "liberty" interest entitled to protection under the due process clause)).[12, 13] Therefore, the loss of a prison work assignment, without more, does not constitute an atypical and significant hardship such as would invoke our original jurisdiction.[14] *See Feliciano*,

---

[12] In *Bush*, we held that the petitioner had no property interest in his work assignment that was protected by due process but considered a claim brought pursuant to 37 Pa. Code § 93.10 (Inmate discipline). *Bush*, 1 A.3d at 985. Petitioner makes no such claim here.

[13] We are similarly unwilling to recognize a procedural due process claim regarding Petitioner's alleged application for commutation. At best, this is a speculative argument, not a protected interest. *See*, *e.g., Shore*, 168 A.3d at 383 (only if party establishes the deprivation of a protected interest, will the Court consider what type of procedural mechanism is required to fulfill due process).

[14] The Dissent's criticism of the Court's reliance on *Feliciano* is misplaced. In *Feliciano*, a unanimous *en banc* panel clarified the manner in which a petitioner could invoke this Court's original jurisdiction. In so doing, the Court did not define the elements of a procedural due process claim.

The test to determine whether a petitioner was deprived of procedural due process may vary, depending on the particular circumstances. The essential requisites are notice and a meaningful opportunity to be heard. *Commonwealth v. Turner*, 80 A.3d 754, 761 (Pa. 2013). In the context of prison disciplinary proceedings, the following is required: "[A]dvanced written notice of the claimed violation; a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken[;] . . . [and the ability] to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974).

The Dissent suggests that this Court has embarked upon a *sua sponte* review of the legal sufficiency of Petitioner's claim but has misconstrued the analysis. This Court does not apply *Turner*, or *Wolff*, or some other formulation of a due process inquiry. It is also not concerned with the credibility of Petitioner's assertion that the authorities at SCI-Phoenix wrongfully removed

250 A.3d at 1275-76; *see also Sandin v. Conner*, 515 U.S. 472, 487 (1995) (rejecting procedural due process claim brought by prisoner in Hawaii that a misconduct charge would impact his chances of parole as "too attenuated").

### III. CONCLUSION

For the foregoing reasons, we sustain the Department's preliminary objection to this Court's appellate jurisdiction. Nevertheless, we *sua sponte* conclude that Petitioner has failed to invoke this Court's original jurisdiction. Accordingly, we dismiss the petition for review with prejudice.[15, 16]

LORI A. DUMAS, Judge

---

him from his prior work assignment. Rather, we opine only that an inmate's work assignment is not a protected interest subject to due process protections, and, accordingly, its deprivation cannot trigger this Court's original jurisdiction.

[15] The *Feliciano* Court recognized that prior precedent considering procedural due process claims was inconsistent. 250 A.3d at 1275-80 (discussing cases). It therefore granted the petitioner therein leave to amend his petition. *Id.* at 1280. Such relief is unwarranted here because the jurisdictional requirements are clear.

[16] Additionally, Petitioner has filed an application for summary relief and praecipe for default judgment requesting judgment in his favor due to the Department's purported failure to timely file a brief in support of its preliminary objections. *See* Appl. for Summ. Relief, 12/1/22, at 1. The Department timely filed its brief on November 1, 2022. Accordingly, the application for summary relief is denied and the praecipe for default judgment is dismissed.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antonio D. Ferguson,                          :
                    Petitioner                :
                                              :
          v.                                  :     No. 310 M.D. 2022
                                              :
Pennsylvania Department of                    :
Corrections, Secretary's                      :
Office of Inmate Grievances                   :
& Appeals,                                    :
                    Respondents               :

# **O R D E R**

AND NOW, this 30th day of November, 2023, the Department of Corrections' preliminary objection to this Court's appellate jurisdiction is SUSTAINED. Nevertheless, the Court concludes *sua sponte* that Petitioner Antonio D. Ferguson has failed to invoke this Court's original jurisdiction. Accordingly, the petition for review, filed June 9, 2022, is DISMISSED WITH PREJUDICE. Petitioner's application for summary relief is DENIED. Petitioner's praecipe for default judgment is DISMISSED.

LORI A. DUMAS, Judge

Antonio D. Ferguson,                           :
                          Petitioner           :
                                               :
             v.                                :    No. 310 M.D. 2022
                                               :    Submitted: April 21, 2023
Pennsylvania Department of                     :
Corrections, Secretary's Office                :
of Inmate Grievances & Appeals,                :
                          Respondents          :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge

**OPINION NOT REPORTED**

**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED: November 30, 2023**


Chief Justice John G. Roberts, Jr. famously analogized judges to umpires whose job it is to call balls and strikes. Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 56 (2005). Today, early in the first inning, the umpires in the Majority have sent the players home based on their prediction of the outcome of the game and have declared a winner based on that prediction. Under the guise of policing this Court's subject matter jurisdiction, the Majority, in substance, raises and sustains its own demurrer to Antonio D. Ferguson's (Ferguson) Petition for Review (Petition) against the Pennsylvania Department of Corrections, Secretary's Office of Inmate Grievances and Appeals (DOC). Because I believe such sua sponte judicial intervention distorts the law of subject matter jurisdiction and displaces the litigants from their proper role, and because it is not the first time

this Court is traveling this dangerous path, I must respectfully, and forcefully, dissent.

I begin with an overview of basic principles of sua sponte review and subject matter jurisdiction. A court raises an issue sua sponte when it does so "[w]ithout prompting or suggestion" or "on its own motion." Black's Law Dictionary 1722 (11th ed. 2019). In general, "sua sponte decision-making is **roundly disfavored** in the law" because of the fundamental idea that it "deprives counsel of the opportunity to brief and argue the issues . . . [and] disturbs the process of orderly judicial decision-making by depriving the court of the benefit of counsel's advocacy[.]" *Commonwealth v. Hamlett*, 234 A.3d 486, 502-03 (Pa. 2020) (Wecht, J., dissenting) (italics and internal quotation marks omitted; emphasis added). *See also Pa. State Police v. Am. C.L. Union of Pa.*, 300 A.3d 386, 395 (Pa. 2023) (reversing this Court for abusing its discretion in raising a non-jurisdictional issue sua sponte); *Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 724-25 (Pa. 2022) (reversing this Court for raising three issues sua sponte); and *Wiegand v. Wiegand*, 337 A.2d 256, 257 (Pa. 1975) (chastising the Superior Court for "exceed[ing] its proper appellate function of deciding controversies presented to it").

Sua sponte decision-making is disfavored because, as a general rule, it is incompatible with the structure of our system of litigation. "[O]ur adversary system is designed around the premise that the parties know what is best for them, **and are responsible for advancing the . . . arguments entitling them to relief**." *Commonwealth v. Reid*, 235 A.3d 1124, 1159 (Pa. 2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)) (emphasis added). Consistent with that basic tenet, judges must remain "neutral and impartial arbiters," so it is inappropriate

for the court to engage in advocacy for the parties. *Id.* Justice Castille summarized the principle well in his concurrence in *Commonwealth v. Williams*:

> [Courts are] neither obliged, nor even particularly equipped, to develop an argument for a party. **To do so places the Court in the conflicting roles of advocate and neutral arbiter**. The Court is left to guess at the actual complaint that is intended by the party. The practice of fashioning arguments for a party is also unfair to the would-be responding party, which will only learn upon receipt of the Opinion that the Court perceived the argument, and thus will have been deprived of an opportunity to respond. The result is a decision on the issue without the benefit of helpful advocacy from either side. This is not a model for sound decision-making.

782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring) (emphasis added).

It is also true, however, that a time-honored exception to this general non-intervention principle is courts' ability to sua sponte raise the issue of subject matter jurisdiction. "The lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court sua sponte **if necessary**." *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 399 (Pa. 2021) (quoting *LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 879 (Pa. 1986)) (emphasis added). Some courts and commentators have opined that it does not necessarily follow from a court's sua sponte raising of subject matter jurisdiction that it must proceed in a way that **deprives** litigants of the opportunity to be heard on the issue. The United States Court of Appeals for the Seventh Circuit, for example, observed that "[p]rompt, sua sponte **recognition** of flaws in subject matter jurisdiction is commendable[,]" but it also explained that "sua sponte dismissals without prior notice or opportunity to be heard **are hazardous**." *Joyce v. Joyce*, 975 F.2d 379, 386 (7th Cir. 1992) (citation and quotation marks omitted) (emphasis added). It continued that courts should exercise caution in sua sponte **dismissals**, and that "unless the defect is **clearly incurable** a [trial] court should grant the plaintiff leave to amend, allow the parties

to argue the jurisdictional issue, or provide the plaintiff with the opportunity to discover the facts necessary to establish jurisdiction." *Id.* (citation omitted) (emphasis added). Professors Milani and Smith offer a similar solution, suggesting that

> [c]ourts can avoid the problems associated with sua sponte decisions by ordering supplemental briefing as a matter of course when they identify an issue not raised by the litigants. This satisfies the due process concerns of notice and the opportunity to be heard, and is also consistent with the adversary process's emphasis on judicial neutrality and party control of litigation.

Adam A. Milani & Michael R. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 Tenn. L. Rev. 245, 316 (2002). *See also* Blake R. Hills, *Sua Sponte Dismissals: Is Efficiency More Important Than Procedural Fairness?*, 89 UMKC L. Rev. 243 (2020) ("A court can certainly **raise** issues sua sponte, but . . . it should not **decide** issues sua sponte.") (emphasis in original) (italics omitted).

Because in this case the Majority purports to sua sponte raise subject matter jurisdiction, I next set forth the general legal principles on the topic. Our Supreme Court has recently reiterated a helpful definition of subject matter jurisdiction: It centers on a court's "competency . . . to determine controversies of the **general class** to which the case then presented for its consideration belongs." *Bisher*, 265 A.3d at 399 (quoting *Riedel v. Hum. Rels. Comm'n of Reading*, 739 A.2d 121, 124 (Pa. 1999)) (emphasis added). Subject matter jurisdiction is important because it comprises one of the ingredients of a judgment capable of binding the parties.[1] It

---

[1] Typically, a valid judgment requires two ingredients: A court having jurisdiction over the subject matter and jurisdiction over the person. Restatement (Second) of Judgments § 1 (Am. Law Inst. 1982).

makes sense that a judgment cannot be effective where a court lacks subject matter jurisdiction because "[a] fundamental element of procedural fairness is that a tribunal presuming to adjudicate a controversy **have legal authority to do so**. One aspect of the question of authority is whether the tribunal is empowered to adjudicate the type of controversy presented." Restatement (Second) of Judgments (Restatement) § 1 cmt. a (Am. Law Inst. 1982) (emphasis added). And of course, it is black letter law that a court's **legal authority** to adjudicate a given controversy springs from "constitutional provisions or from statutory provisions . . . to establish courts and to provide for their jurisdiction." *Id.* § 11, cmt. a. Consistent with that view, our Supreme Court has recognized that "[j]urisdiction of the subject matter is conferred by the Commonwealth's Constitution and laws." *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 29 (Pa. 2004) (concluding the Commonwealth Court erred in sua sponte raising a statutory affirmative defense that did not implicate subject matter jurisdiction). Because courts are powerless to act outside their lawful subject matter jurisdiction, it follows (and is well settled) that defects in subject matter jurisdiction are "not waivable and may be raised by a court on its own motion." *Domus, Inc. v. Signature Bldg. Sys. of PA, LLC*, 252 A.3d 628, 636 (Pa. 2021) (citation omitted).[2]

---

[2] Defects in personal jurisdiction are waivable because a party is capable of consenting to a court's jurisdiction, either by prior agreement, intentional submission, or failure to object. Restatement § 1, cmt. a. However, we generally think of subject matter jurisdiction as nonwaivable because a court cannot abide unlawful exercise of its judicial power, even if the parties would acquiesce to such a usurpation. "[A]n objection to subject matter jurisdiction is in some sense more fundamental than objections to territorial jurisdiction or notice, in that a court is powerless to decide a controversy with respect to which it lacks subject matter jurisdiction." *Id.* § 11, cmt. d. *Cf. id.* (continuing by noting the problems in the logic of that rationale and suggesting that "[a] more satisfactory analysis of the treatment of the objections to subject matter jurisdiction is simply historical.").

In recent years, the U.S. Supreme Court has grappled with the issue of what issues truly implicate federal courts' subject matter jurisdiction. Like the Commonwealth Court, federal courts' constitutional and statutory grants of authority circumscribe the class of cases they may review—in other words, they are courts of limited jurisdiction. A representative case proves instructive here. Jennifer Arbaugh sued her former employer for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the case proceeded to trial, and Arbaugh won. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503-04 (2006). Her employer, however, moved to dismiss the action after the court entered judgment, arguing that all along, the federal district court had lacked subject matter jurisdiction because the employer had fewer than 15 employees and Title VII's protections apply only to firms with 15 or more employees.[3] *Id.* at 504. The United States District Court for the District of Louisiana dismissed the action because it agreed that the employee-numerosity requirement implicated subject matter jurisdiction and felt it had no choice but to do so—indeed, subject matter jurisdiction can never be waived, even after a trial on the merits. *Id.* The United States Court of Appeals for the Fifth Circuit affirmed. *Id.* at 509. The Supreme Court had to decide whether the employee-numerosity requirement amounted to a nonwaivable issue implicating subject matter jurisdiction, or simply a waivable element of a plaintiff's claim for relief. Writing for a unanimous Court, Justice Ginsburg observed at the outset that "courts [have] sometimes been **profligate in [their] use of the term ['jurisdiction']**." *Id.* at 510 (emphasis added). She further explained that

> [j]udicial opinions . . . often obscure the issue by stating that the court
> is dismissing for lack of jurisdiction when some threshold fact has
> not been established, without explicitly considering whether the

[3] 42 U.S.C. § 2000e(b).

> dismissal should be for lack of subject matter jurisdiction or for failure to state a claim. . . . We have described such unrefined dispositions as "**drive-by jurisdictional rulings**" that should be accorded **no precedential effect** on the question whether the federal court had authority to adjudicate the claim in suit.

*Id.* at 511 (internal citation and quotation marks omitted) (emphasis added).

In holding that the employee-numerosity requirement was not jurisdictional, the Court examined the statute Congress enacted to authorize federal courts to decide cases involving federal questions.[4] *Id.* at 513. It also looked to the text of Title VII to see if Congress had indicated an intent for the employee-numerosity requirement to be jurisdictional. *Id.* at 513-14. Upon its review, it found Congress had authorized federal courts to entertain the claim (as Arbaugh's claim arose under a federal statute) and located no other indication of Congressional intent to limit subject matter jurisdiction in the way proposed by Arbaugh's employer. *Id.* The message of *Arbaugh*, transferrable here, is that the determination of whether a given issue amounts to a subject matter jurisdiction problem—with all its attendant grave effects—turns on whether a court's **constitutional or statutory authorization to act** has something to say on the matter.

Recently, our Pennsylvania Supreme Court decided two cases that track *Arbaugh*'s careful and restricted view of subject matter jurisdiction. In *Domus*, the Court turned to the "general class of cases" understanding of subject matter jurisdiction. There, the question was whether "failure to authenticate a foreign judgment under [Section 4306 of] the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306, deprives a trial court of subject matter jurisdiction such that a challenge to that failure may not be waived[.]" *Domus*, 252 A.3d at 634. In

---

[4] 28 U.S.C. § 1331 authorizes district courts to hear "all civil actions arising under the Constitution, laws, or treaties of the United States."

declining to find the authentication requirement jurisdictional, the Court looked to the Pennsylvania Constitution and the relevant jurisdictional statute for courts of common pleas, concluding that "the absence of proper authentication . . . does **not** render the court of common pleas **incompetent to determine controversies of the general class to which this case belongs**, *i.e.*, actions to enforce foreign judgments." *Id.* at 636 (emphasis added). It helpfully framed the subject matter jurisdiction question as "whether the court **could enter** upon the inquiry, **not whether it might ultimately decide that it was unable to grant relief in a particular case**." *Id.* (quotation marks and citation omitted) (emphasis added).

In *Bisher*, a wrongful death and survival action decided the same year, the Superior Court sua sponte raised two issues that it claimed had deprived the trial court of subject matter jurisdiction: the unauthorized practice of law by a pro se litigant and the complaint's lack of verification. 265 A.3d at 394-95. Disagreeing with the Superior Court's sua sponte raising of those issues, Justice Donohue, writing for a unanimous court, explicitly referenced the United States Supreme Court's subject matter jurisdiction jurisprudence in her analysis. *Id.* at 400. Like *Domus*, *Bisher* also focused its inquiry on the **class of cases** trial courts may hear, reasoning that "there is no question that the trial court was authorized to adjudicate the [e]state's medical malpractice lawsuit that [the plaintiff] attempted to pursue." *Bisher*, 265 A.3d at 400. The *Bisher* Court made it clear that the "label 'jurisdictional' should be reserved only for prescriptions **delineating the class of cases** (subject matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* (internal quotation marks and citation omitted) (emphasis added).

I distill the above sources to clearly stand for a few basic and essential propositions: (i) subject matter jurisdiction refers to a court's authority to adjudicate a **general class** of controversies; (ii) such authority derives from constitutions and specific statutory grants which determine what class of cases a given court may hear, and those authorizations are the appropriate starting point in a subject matter jurisdiction analysis; (iii) a litigant's failure to state a claim upon which relief can be granted does **not** deprive a court of subject matter jurisdiction; and (iv) where subject matter jurisdiction is **truly** at stake, the issue is not waivable and may be raised by a court itself.

To proceed with this analysis, it is necessary to understand our unique subject matter jurisdiction. The Commonwealth Court traces its origins to article V, section 4 of the Pennsylvania Constitution, which provides that the Commonwealth Court "shall have such **jurisdiction** as shall be provided by law." PA. CONST. art. V, § 4.[5] The General Assembly provided for our **original** jurisdiction in Section 761(a)(1) of the Judicial Code, authorizing us to hear "**all** civil actions or proceedings . . . [a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity." 42 Pa.C.S. § 761(a)(1) (emphasis added). *See* 20 G. RONALD DARLINGTON ET AL., PENNSYLVANIA APPELLATE PRACTICE § 40:300 (2022-2023 ed.) (hereinafter Pa. Appellate Prac.) (noting that our "jurisdiction is unusual in that it is usually based upon an analysis of both the identities of the parties to the proceedings and the nature of the cause of action asserted). The General Assembly has carved out five specific exceptions from that broad grant of statutory jurisdictional

---

[5] For a discussion of the background for the creation of the Commonwealth Court and the 1967-68 Constitutional Convention, *see generally* Abraham Lipez, *History of the Commonwealth Court*, 1 Pa. Cmwlth. vii, vii-xi (1971).

authorization. 42 Pa.C.S. § 761(a)(1)(i)-(v).[6] This Court also has **appellate** subject matter jurisdiction over agency decisions, found in Section 763(a) of the Judicial Code, which provides generally that we may hear "appeals from final orders of government agencies" in certain enumerated cases and subject to several exceptions. 42 Pa.C.S. § 763(a). *See also* Pa. Appellate Prac. § 27:100. The General Assembly has also authorized us to hear appeals from courts of common pleas, limited to seven distinct case types. Section 762(a) of the Judicial Code, 42 Pa.C.S. § 762(a). *See also* Pa. Appellate Prac. § 25:300.

One aspect of the procedural posture of this case deserves specific attention. Ferguson filed his Petition on May 27, 2022. This Court issued a per curiam order on July 8, 2022, treating the Petition as one addressed to this Court's **original jurisdiction**. (Order, 7/8/22.) Accordingly, we directed DOC to file an appropriate responsive pleading within 30 days. (*Id.*) DOC opted to file preliminary objections (POs) to the Petition. Its first PO challenged service,[7] and its second, relevant here, challenged jurisdiction, stating "[t]his Court lacks jurisdiction over the instant matter

---

[6] The exceptions are

(1) actions or proceedings in the nature of habeas corpus or post-conviction relief that are not ancillary to appeals to the Commonwealth Court, (2) eminent domain proceedings, (3) actions in which the Commonwealth party may assert the defense of sovereign immunity or where such defense has been waived by statute, (4) actions within the jurisdiction of the Board of Claims, and (5) actions or proceedings in the nature of trespass, as to which the Commonwealth government formerly enjoyed sovereign or other immunity and related proceedings in assumpsit. The sixth exception, which is not listed in the Judicial Code, recognizes that the jurisdiction of the Board of Property includes actions against the Commonwealth involving title to realty.

Pa. Appellate Prac. § 40:302.

[7] In an order dated August 17, 2022, we directed Ferguson to effectuate service, which Ferguson did, so we overruled the PO related to improper service by order dated October 3, 2022. (Order, 10/3/22.)

RCJ - 10

because [Ferguson] is attempting to appeal a grievance outcome. . . ." (POs ¶ 7.) In support of the jurisdictional PO, DOC cited *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374 (Pa. Cmwlth. 2017) (sustaining DOC's **demurrers** to a petition for review alleging First Amendment, U.S. CONST. amend I, and procedural due process violations in the context of a petitioner's attempt to appeal a grievance outcome).

The Majority indicates that "[t]o the extent [DOC] asserts this Court's lack of appellate jurisdiction, we sustain [DOC's PO]." *Ferguson v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 310 M.D. 2022, filed Nov. 30, 2023), slip op. at 1. However, as a matter of adherence to correct procedure, I must disagree with sustaining a **PO** with respect to our **appellate** jurisdiction. First, as discussed above, we ordered the parties to proceed in our **original—not appellate—jurisdiction**. (*See* Order, 7/8/22.) Pennsylvania Rule of Appellate Procedure 1516, Pa.R.A.P. 1516, provides the permissible pleadings in our appellate and original jurisdiction, respectively. In our appellate jurisdiction, generally, "[**n]o answer or other pleading** to an appellate jurisdiction petition for review is authorized . . . ." Pa.R.A.P. 1516(a) (emphasis added). In contrast, among the permissible pleadings in "petition[s] for review addressed to [our] original jurisdiction" are "preliminary objections[] and answers thereto." Pa.R.A.P. 1516(b). Therefore, it is incongruous to sustain a PO to our lack of appellate jurisdiction here, where we are by order sitting in our original jurisdiction.

After purporting to sustain the jurisdictional PO to the extent Ferguson endeavored to invoke our appellate jurisdiction, the Majority observes that "[i]n its Brief, while maintaining its position that [Ferguson] seeks to appeal a grievance outcome, [DOC] asserts further that [Ferguson's] claim does not sound in this

Court's original jurisdiction, observing that inmates lack a property right in keeping a prison job." *Ferguson*, slip op. at 4 (citing DOC's Br. at 7). The Majority explains that DOC's POs "do not address adequately the substance of [Ferguson's P]etition, which purports to allege a violation of his right to procedural due process." *Id.* The Majority intimates that DOC has waived its PO insofar as it might be construed to seek dismissal from our original jurisdiction. *Id.* at 4 n.4. It cites *Commonwealth ex rel. Corbett v. Peoples Benefit Services, Inc.*, 895 A.2d 683 (Pa. Cmwlth. 2006), for the proposition that "[b]riefing an issue, without sufficiently articulating it in [POs], is insufficient to preserve it for our review." *Ferguson*, slip op. at 4 n.4.

In *Peoples Benefit Services*, the Court looked to Pennsylvania Rule of Civil Procedure 1028(b)[8] and "decline[d] to consider further" an argument a party "only ma[de] in a footnote in its brief . . . rather than raising the matter in its [POs]." *Peoples Benefit Services*, 895 A.2d at 690 n.13. Even if the Majority were correct that DOC's jurisdictional PO ran afoul of Rule 1028(b)'s specificity requirement, recall that the issue of subject matter jurisdiction simply cannot be waived. *Domus*, 252 A.3d at 636.[9] That means that whether DOC complied sufficiently with Rule 1028(b) is immaterial because nothing DOC could do or fail to do would take subject matter jurisdiction off the table. *See Atkins v. Workmen's Comp. Appeal Bd. (Geo-Con, Inc.)*, 651 A.2d 694, 699 n.3 (Pa. Cmwlth. 1994) (declining to find subject matter jurisdiction issue waived where the claimant failed to preserve the issue

---

[8] The text of Rule 1028(b) states in relevant part that the POs "shall state specifically the grounds relied upon . . . ." Pa.R.Civ.P. 1028(b).

[9] Notably, in a recent unpublished opinion, a panel of this Court **overruled** DOC's PO to our original jurisdiction, finding it to have "not formulated clear and specific grounds for our review," and "not address[ed] adequately the substance of [the p]etitioner's petition." *Coats v. Dep't of Corr.* (Pa. Cmwlth., No. 329 M.D. 2022, filed Oct. 2, 2023), slip op. at 1, 4. However, it then purported to resolve the issue—which was already raised by DOC—sua sponte, as it purports to do here. *Id.*, slip op. at 1. That opinion suffers the same infirmity as this case. *See infra* n.15.

below, but not purporting to raise the issue sua sponte), and *Delaware County v. City of Philadelphia*, 620 A.2d 666, 667 (Pa. Cmwlth. 1993) (declining to find subject matter jurisdiction waived, rather than purporting to raise issue sua sponte, where party "assert[ed] that [other side] waived the jurisdiction issue by raising it on appeal in a manner inconsistent with that raised below").

Respectfully, notwithstanding how the Majority comes to address the issue, the Majority's subject matter jurisdiction analysis as to our original jurisdiction is flawed. In my view, the resolution of the original jurisdiction question is simple. First, just like in *Arbaugh*, *Domus*, and *Bisher*, we should begin with the **statute** that dictates our subject matter jurisdiction to decide whether Ferguson's claim falls within the class of cases we are permitted to hear in our original jurisdiction. With the exceptions noted above, our Court must hear "**all** civil actions . . . [a]gainst the Commonwealth government." 42 Pa.C.S. § 761(a)(1) (emphasis added). The "Commonwealth government" includes "the departments, boards, commissions, authorities and officers and agencies of the Commonwealth." Section 102 of the Judicial Code, 42 Pa.C.S. § 102. There is no question that here, Ferguson has filed a civil action against the Commonwealth government (i.e., a petition for review against DOC, a Commonwealth agency). In undertaking a true subject matter jurisdiction analysis, we need not look to the substance of Ferguson's claims. Because Ferguson's Petition satisfies Section 761's jurisdictional requirements,[10] it falls within the general class of cases we are authorized to hear in our original

---

[10] Debra Punsky Rand summarized our original jurisdiction for inmate civil litigation as follows: "if the relief sought is strictly in the nature of declaratory and injunctive relief, and if the Commonwealth or a statewide officer is named, then the [C]ommonwealth [C]ourt will hear such cases in its original jurisdiction." Debra Punsky Rand, *A Historical Review of Inmate Civil Litigation in the Commonwealth Court of Pennsylvania*, 20 Widener L.J. 239, 241 (2010).

jurisdiction, and therefore, we should not dismiss it for lack of subject matter jurisdiction with respect to our original jurisdiction.[11]

Beyond briefly describing this Court's original jurisdiction and reproducing the text of Section 761 in a footnote, the Majority does not analyze our subject matter jurisdiction in any meaningful way. *Ferguson*, slip op. at 5-6.[12] Rather, it relies on *Feliciano v. Pennsylvania Department of Corrections*, 250 A.3d 1269, 1270 (Pa. Cmwlth. 2021) (en banc). Respectfully, even a cursory analysis of *Feliciano* reveals

---

[11] Since the early days of this Court's existence, it has engaged in a subject matter jurisdiction analysis by explicitly considering and referencing its grant of statutory authority from the General Assembly. *See, e.g.*, *Williams v. Bd. of Prob. & Parole*, 2 Pa. Cmwlth. 312, 314-15 (1971) (analyzing the relevant statutes and explaining that they "serve not only to buttress the certainty of our jurisdiction . . . but also to define its perimeters").

[12] The Majority explains "a court shall not consider a declaratory judgment matter unless satisfied that its jurisdiction has been invoked." *Ferguson,* slip op. at 6 (citing *Reese v. Adamson*, 146 A. 262, 263 (Pa. 1929)). The bottom line is that—consistent with our Supreme Court's recent clarity on the matter—petitioners "invoke" the original jurisdiction of this Court when, from the face of their petitions for review, we can discern that they have satisfied the requirements of Section 761 of the Judicial Code. General principles of subject matter jurisdiction and our jurisdictional statute require nothing more. I would further note that *Rosario v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 474 M.D. 2020, filed July 22, 2022), cited by the Majority in footnote 10, is a true subject matter jurisdiction case which applies the correct analysis for which I argue. *Ferguson,* slip op. at 6 n.10. In *Rosario*, the Court looked to Section 761 of the Judicial Code and determined that the petitioner's petition for review fell within a general class of cases the General Assembly has specifically said our Court is **not** authorized to entertain in our original jurisdiction, namely, actions seeking money damages. The *Rosario* Court was not examining the substance of the petition for review beyond whether the petitioner had filed a class of case the **General Assembly** had indicated by statute we could not review. The other unpublished memorandum opinions the Majority cites in that footnote do not, in substance, deal with subject matter jurisdiction. *RT Partners, LP v. Allegheny County Office of Property Assessment* (Pa. Cmwlth., Nos. 637-639 C.D. 2022, filed September 11, 2023), considers whether a petitioner could satisfy the Declaratory Judgments Act's, 42 Pa.C.S. §§ 7531-7541, standing requirement that an actual controversy must exist, and *Romig v. Mifflin County Tax Claim Bureau* (Pa. Cmwlth., No. 1138 C.D. 2021, filed August 10, 2023), decides whether the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803, is the appropriate vehicle through which to bring a negligence action. While both cases purport to frame those issues as "jurisdictional," they are not subject matter jurisdiction cases.

why the Majority's reliance on it here is misplaced. First, I submit that our use of the term "jurisdiction" in *Feliciano* was imprecise, and that we did not truly use it to refer to our subject matter jurisdiction. Rather, in substance, *Feliciano* was about whether the petitioner there had stated a **viable procedural due process claim**. Justice Ginsburg might have described our ruling in *Feliciano* as a "drive-by jurisdictional ruling," because we "obscure[d] the issue by stating that [we were] dismissing 'for lack of jurisdiction' when some threshold fact ha[d] not been established, without explicitly considering whether the dismissal should [have been] for lack of subject matter jurisdiction or for failure to state a claim." *Arbaugh*, 546 U.S. at 511 (citation omitted). Our language reveals not a true subject matter jurisdiction analysis but an analysis more akin to ruling on a demurrer:[13]

> Turning to the [p]etition for [r]eview itself, Feliciano **fails to state** therein that the punishment imposed upon him as a result of his failed drug test, *i.e.*, 30 days of disciplinary custody, constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*[ *v. Conner*], 515 U.S. [472,] 484 [(1995)]. . . . Nor does he **offer any averments** that would allow us to come to such a conclusion at this stage in the proceedings. There is thus nothing in the [p]etition for [r]eview, as currently constituted, that would allow us to conclude that [DOC] was required to afford Feliciano with procedural

---

[13] As we explained:

A preliminary objection in the nature of a demurrer admits as true all well-pled material, relevant facts and every inference fairly deducible from those facts. [] The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer. [] Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim upon which relief may be granted. [] If the facts as pleaded state a claim for which relief may be granted under any theory of law, there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected.

*Palmer v. Bartosh*, 959 A.2d 508, 512 n.2 (Pa. Cmwlth. 2008) (citations omitted).

due process in relation to that sanction. Consequently, we do not have original jurisdiction to consider the [p]etition for [r]eview and will sustain [DOC]'s preliminary objections on that basis as well. **We will however, permit Feliciano to amend his [p]etition for [r]eview** within 30 days of receiving this opinion, in light of our articulation *supra* of clear guidance regarding the necessary components of a **legally viable procedural due process claim** in the context of internal prison matters.

*Feliciano*, 250 A.3d at 1279-80 (emphasis added).

Notably absent from *Feliciano*'s analysis is a discussion about whether the claim at issue falls within our general class of cases or any reference to Section 761. Rather, it looked at the contents of the petition for review itself and determined that petitioner had **failed to plead sufficient facts to state a claim**—not the appropriate analysis to determine whether we have subject matter jurisdiction, but appropriate indeed in ruling on a demurrer. Moreover, an obvious indication that our subject matter jurisdiction was **not** truly implicated in *Feliciano* is our order. *Id.* at 1280. We allowed the petitioner to **amend** his pleading so he could have the opportunity **to state a viable claim**, "in light of our articulation [] of clear guidance regarding the necessary components of a legally viable procedural due process claim in the context of internal prison matters." *Id.* However, that violates a basic tenet of subject matter jurisdiction because there is no way for a litigant to cure a subject matter jurisdiction issue absent petitioning the legislature to change the Judicial Code.[14] Thus, if *Feliciano* truly were a subject matter jurisdiction case, we would

---

[14] Courts typically grant leave to amend liberally "to allow full development of a party's **theories and averments**." *Newcomer v. Civ. Serv. Comm'n of Fairchance Borough*, 515 A.2d 108, 111 (Pa. Cmwlth. 1985) (emphasis added). The policy animating the rule "is to prevent cases from turning on purely technical defects." *Id.* Subject matter jurisdiction is, of course, not purely technical, and if we recognize that a given case does not belong in our Court (in our original jurisdiction, because of the general cause of action stated or identity of the parties), there is nothing a party could do to "fix" the petition that would change the jurisdictional reality of the situation. **(Footnote continued on next page…)**

not (because we could not) have dismissed the petition for review without prejudice and allowed the petitioner to amend the petition for review within 30 days. Quite simply, a subject matter jurisdiction analysis turns on "whether the court could enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in a particular case." *Domus*, 252 A.3d at 636 (internal quotation marks and citation omitted).[15]

The substance of the Majority's analysis here elucidates that it was not engaged in a true subject matter jurisdiction analysis, but rather a demurrer analysis—an analysis we should **not** conduct sua sponte. The Majority, in true demurrer fashion, probes into Ferguson's Petition to determine whether it was legally insufficient. *See* Pa.R.Civ.P. 1028(a)(4). The Majority sets forth the elements Ferguson would have to satisfy to state a claim—among them, that an inmate must show that the prison "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" for procedural due process rights to be triggered. *Ferguson*, slip op. at 7. (quoting *Feliciano*, 250 A.3d at 1275-76). The Majority then looks to Ferguson's specific factual averments. *Id.* And finally, it determines **the facts alleged** in the Petition do not rise to the level of "atypical and significant hardship" **sufficient** for Ferguson **to state a procedural**

---

Moreover, allowing amendment where we truly lack jurisdiction is an oxymoron because having just declared we are powerless to hear the case, we would nonetheless continue to maintain jurisdiction over it by allowing amendment.

[15] After our en banc decision in *Feliciano*, the petitioner did amend his petition. *Feliciano v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 588 M.D. 2019, filed Jan. 26, 2022) (*Feliciano II*), slip op. at 3, *aff'd*, 283 A.3d 196 (Pa. 2022) (per curiam). Compounding the imprecision in our earlier en banc decision, the three-judge panel opined that "we lack jurisdiction to consider his action," describing the issues with the petitioner's new pleading as "jurisdictional defects." *Id.*, slip op. at 4. However, it again engaged in a demurrer-like analysis, explaining that the amended petition was "devoid of averments that would allow us to compare the conditions of [the petitioner's] misconduct penalty to that experienced by inmates during normal carceral confinement." *Id.*

**due process claim** under the Fourteenth Amendment, U.S. Const. amend. XIV. *See id*, slip op. at 8 ("We are not prepared to recognize a due process claim herein . . . . [T]he loss of a prison work assignment, without more, does not constitute an atypical and significant hardship . . . ."). That type of inquiry—looking to facts alleged to determine whether they line up with a claim recognized by the law—is the hallmark of a **demurrer analysis**. *See, e.g.*, *Toland v. Pa. Bd. of Prob. & Parole*, 263 A.3d 1220, 1231-40 (Pa. Cmwlth. 2021) (setting forth relevant legal requirements for causes of action, then analyzing the legal requirements against the factual averments, to determine whether the petitioner stated a viable claim with the facts alleged in his petition for review).

In sum, for purposes of a subject matter jurisdiction analysis, it does not matter whether we can grant Ferguson relief based on the facts he alleges, or, in other words, whether Ferguson has stated a claim upon which relief can be granted. What matters is whether we can say that he has filed a civil action against the Commonwealth government. Here, Ferguson undoubtedly has. DOC could have, like it did in *Feliciano* and *Shore*, raised a demurrer in its POs. But **DOC did not**. Therefore, it was not appropriate for this Court to sua sponte analyze whether Ferguson failed to state a claim where DOC, having not filed a demurrer, did not put the legal sufficiency of Ferguson's Petition before us.[16]

---

[16] The *Coats* majority engaged in an almost identical inquiry, dismissing a petition for review with prejudice for want of jurisdiction where, in substance, it analyzed **the legal sufficiency** of the pleading rather than our subject matter jurisdiction while claiming to raise the jurisdictional issue "sua sponte." *See supra* n.9. However, *Coats* is particularly puzzling because there, one of DOC's POs **was a demurrer** challenging the legal sufficiency of petitioner's claims, in addition to the PO challenging jurisdiction. *Coats*, slip op. at 1. In a footnote, the majority notes that the procedural due process issue was not addressed by DOC in its jurisdictional PO, but "in the context of its [PO] by demurrer." *Coats*, slip op. at 5, n.4. Notwithstanding, the majority never **explicitly** addresses or rules on the demurrer, and, as here, instead **claims** to raise lack of original jurisdiction **(Footnote continued on next page…)**

I write further to explain, respectfully, why the Majority's approach is unwise. Intuitively, we all know at our core that **how** we lose affects our perception of the ultimate outcome. To harken back to the baseball metaphor, when we feel that the umpire accurately and impartially decided each call, we can be satisfied that despite the disappointment of losing, we had a fair shake. Professor Hollander-Blumoff has explained that, in psychological terms, "[w]hen people feel that they have received fair treatment, they are more likely to adhere to, accept, and feel satisfied with a given outcome, and to view the system that gave rise to that outcome as legitimate." Rebecca Hollander-Blumoff, *The Psychology of Procedural Justice in the Federal Courts*, 63 Hastings L.J. 127, 134 (2011). And people do not just care about fair process because it might promise a winning outcome. Indeed,

> the empirical evidence suggests that individuals value fairness of process, **separate and apart from outcome**, because of the special message that fairness of process sends to its recipients: an authority who acts in a fair manner is an authority who is legitimate and cares about the dignity and social standing of those who stand before it.

*Id.* at 137-38 (emphasis added).

In my view, these principles should remind courts to only raise issues—or dismiss actions—sua sponte when it is **necessary** to do so. Respecting party control of litigation—while sometimes frustrating—is crucial to ensuring that courts in our

---

**sua sponte** and decide the case accordingly. Using the same language as in this Majority, "[w]e are not prepared to recognize a procedural due process claim herein," the majority in *Coats* evaluates the facts alleged and essentially determines the petitioner failed to state a procedural due process claim. *Coats*, slip op. at 7. However, had the majority expressly addressed the demurrer, it would not have apparently abdicated its role as neutral arbiter and, instead, would have addressed the **parties'** contentions. What is more, had it recognized that it was essentially sustaining the demurrer, it could have avoided the unnecessarily harsh result of dismissing the petition **with prejudice**, and like the *Feliciano* Court, allowed Coats to amend his petition. It also would not have taken another step on the path of "profligate . . . use of the term ['jurisdiction']" leading us to the case we have today. *Arbaugh*, 546 U.S. at 510.

system of litigation **are** and **seem** fair to all litigants. When we respect our proper role as **neutral** arbiter, we increase the likelihood that litigants will perceive the result, even when they lose, as legitimate and fair.

To summarize, I question whether it was technically correct, as a matter of procedure, for DOC to file, and the Majority to sustain, **a PO** with respect to our **appellate jurisdiction** when we had ordered the Petition to be considered in our **original jurisdiction**. Regardless, with respect to our original jurisdiction, I would find that Ferguson's claim falls squarely within our subject matter jurisdiction, as it is a civil action against the Commonwealth government authorized by Section 761 of the Judicial Code. The Majority "profligately" uses the word "jurisdiction," with all its attendant grave effects, where it is actually examining whether Ferguson has stated a claim. DOC did **not** file a demurrer, so this Court **should not** sua sponte scrutinize the Petition and determine whether Ferguson's claim is legally insufficient. And that error was compounded by the Majority then dismissing the Petition **with prejudice**. Even were we to agree that this Petition did not allege facts sufficient to state a claim, Ferguson, like the petitioner in *Feliciano*, should be given the opportunity to amend his Petition. Unfortunately, what has happened here is that, by improperly considering a failure to state a claim as implicating our subject matter jurisdiction, we have given ourselves *carte blanche* to sua sponte raise **and** resolve a demurrer, and then deny a petitioner the opportunity to amend the pleading to state a claim that **is** legally sufficient. It is **DOC's responsibility** to file a demurrer, and our responsibility to allow the petitioner to respond; it is not within the purview of this Court to be both advocate and adjudicator.

For all the foregoing reasons, and because I would have overruled the jurisdictional PO, I must respectfully dissent.

_____
**RENÉE COHN JUBELIRER,** President Judge